UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MATTHEW R. WHETTEN, | ) | Bankruptcy Case No. 11-14571 EEB |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-14572 EEB |
| RAY'S COLLISION, INC., | ) | Chapter 11 |
| | ) | |
| | ) | **Jointly Administered Under** |
| Debtor. | ) | **Case No. 11-14571 EEB** |

### ORDER DISMISSING CHAPTER 11 CASES

THIS MATTER comes before the Court on the United States Trustee's Motion to Convert or Dismiss Chapter 11 Case Under 11 U.S.C. § 1112(b)(4) (the "Motion") and the Debtors' Objection. Following an evidentiary hearing on this matter, the Court hereby FINDS and CONCLUDES that cause exists to dismiss these cases due to the Debtors' repeated failures to file timely and accurate monthly operating reports with the U.S. Trustee ("UST").

**I.    Background**

Debtor Matthew Ray Whetten is the founder and sole owner of Debtor Ray's Collision, Inc. ("RCI"). RCI is a Colorado corporation that provides automotive repair, towing, tire and other related automotive services in Castle Rock, Colorado. Both Debtors filed Chapter 11 petitions on March 8, 2011, and have been functioning as debtors-in-possession for the last fifteen months. RCI filed an amended petition on May 20, 2011, designating itself as a "small business debtor" pursuant to 11 U.S.C. § 101(51D).[1] Small business debtors are required to file a plan of reorganization within the first 300 days of the case pursuant to § 1121(e)(2). RCI did not meet this deadline. It was not until the eve of the hearing on the UST's Motion that Mr. Whetten filed a Joint Plan of Reorganization and Disclosure Statement on March 5, 2012.

---

[1]    Unless otherwise specified, all references to "Code," "Section," and "§" are to Title 11, United States Code.

Both Debtors have also been consistently late in filing monthly operating reports and in paying quarterly fees to the UST. Based on these deficiencies, the UST filed its Motion, seeking conversion or dismissal of Debtors' cases. At the evidentiary hearing, the UST asserted additional grounds as cause for dismissal, including the untimeliness of Debtors' plan and disclosure statement, continuing loss or diminution of Debtors' estates, and the absence of a reasonable likelihood of rehabilitation. Debtors object to conversion or dismissal, arguing they are now current on all reporting requirements and quarterly fees, and have proposed a viable plan of reorganization.

## II.   Discussion

Section 1112(b) governs the conversion or dismissal of Chapter 11 cases. That section contains sixteen examples of "cause" to convert or dismiss a case. 11 U.S.C. § 1112(b)(4). The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 582-83 (Bankr. S.D.N.Y. 2009). The movant bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC*, 433 B.R. 848, 861 (Bankr. D.N.M. 2010). If cause is established, § 1112 provides that the Court *shall* convert or dismiss, unless there are "unusual circumstances" that establish that such relief is not in the best interests of creditors and the estate. 11 U.S.C. §§ 1112(b)(1), (b)(2). Thus, once cause is demonstrated, the burden shifts to the opposing party to prove "unusual circumstances." *In re Dr. R.C. Samanta Roy Inst. of Science Tech. Inc.*, 2011 WL 2350095, at *3 (3d Cir. June 15, 2011).

The UST asserts cause exists under § 1112(b)(4)(F) due to an "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [Chapter 11]," and § 1112(b)(4)(H) for failure to "timely. . . provide information or attend meetings reasonably requested by the United States trustee." 11 U.S.C. §§ 1112(b)(4)(F), (4)(H). A debtor-in-possession is required to perform the duties of a trustee specified in § 704(a)(8), which mandates the filing of periodic operating reports and summaries and such other information as the UST or court requires if the business of the debtor is authorized to be operated. 11 U.S.C. §§ 704(a)(8), 1106(a)(1). The UST is charged with supervising the administration of Chapter 11 cases, including a debtor's performance of its statutory and fiduciary responsibilities. 28 U.S.C. § 586(a)(3). To perform this role, the UST has adopted reporting requirements embodied in its guidelines, which a debtor-in-possession is required to fulfill. The UST guidelines for this district require a debtor-in-possession to file a monthly report within twenty-one days after the end of the month covered by the report.[2] These reports must include basic financial information, such as a statement of accounts receivable and payable, payments to professionals, and postpetition taxes payable. In addition, a debtor must

---

[2]   U.S. Department of Justice, Office of the United States Trustee, Districts of Colorado and Wyoming, Operating Guidelines and Reporting Requirements of the Untied States Trustee For Chapter 11 Debtors In Possession and Chapter 11 Trustees, *available at* http://www.justice.gov/ust/r19/denver/chapter11.htm.

provide, at least every six months, a periodic financial report for any entity in which the debtor holds a substantial or controlling interest. Fed. R. Bank. P. 2015.3.

In this case, the UST presented evidence that both Debtors failed to file timely, accurate monthly reports, and that Mr. Whetten failed to file timely periodic reports for an entity he owns called 8898 Burning Ridge, LLC. Specifically, the evidence showed that RCI failed to file any monthly reports until six months into the case, when RCI filed five months worth of the monthly reports at one time on August 5, 2011. After that initial bulk filing, there was another gap of four months, when RCI filed another batch of monthly reports on December 2, 2011. On that same day, Whetten filed his first nine months worth of monthly reports. After another two-month gap in filing, both Debtors filed yet another batch of catch-up monthly reports on February 8, 2012. Debtors' monthly reports for January 2012 were timely filed. Mr. Whetten filed his periodic reports for the Burning Ridge entity in a similar, tardy fashion.

Not only were the monthly reports not filed on time, but they were not filed in a complete and accurate manner. The bankruptcy analyst for the UST's office who dealt with Debtors' cases testified that the monthly reports Debtors filed in 2011 were extremely deficient. They did not contain accounts payable and receivable information, a schedule of payments to professionals and postpetition taxes payable, or bank account reconciliations. The UST's office contacted Debtors' counsel by email and by phone regarding these deficiencies and to request other necessary information, but received no response for weeks. It was not until February 2012, after the UST had filed a certificate of contested matter in regard to this Motion to Dismiss and nearly one year into these cases, before the Debtors attempted to fully meet their reporting requirements. The Debtors' failure to provide timely, accurate information prevented the UST from effectively monitoring Debtors' cases and ensuring Debtors' compliance with the Code.

Debtors did not dispute the UST's version of events. Mr. Whetten's only excuse was that he was busy running RCI's business. The Court believes that Mr. Whetten has been extremely busy. He testified that he has been working approximately 15 hours per day, because he eliminated certain staff positions and absorbed that work himself. Nevertheless, this "excuse" is unavailing. Every debtor-in-possession faces the weighty duties of running a business and meeting the fiduciary obligations imposed by the Code. To allow a debtor to sidestep these duties simply because he is "busy" would render the Code's reporting requirements a nullity.

Mr. Whetten also stressed that RCI has now hired an accountant to assist in completing the monthly reports and insists that all future monthly reports will be timely and accurate. However, the Court granted the Debtors' motion to employ an accountant on July 6, 2011, but Debtors still failed to file timely, accurate monthly reports for another six months. Nor does the fact that the Debtors eventually filed their reports cure this problem. The late filing of catch-up monthly reports does not "satisfactorily explain or excuse failure to satisfy [a debtor's] duties as a chapter 11 debtor." *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 716-17 (Bankr. D. Md. 2011). Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out.

Monthly reports and the financial disclosures contained within them "are the life-blood of the Chapter 11 process" and are more than "mere busy work." *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a "mere technicality." *In re Ronald Kern & Sons*, 2002 WL 1628908, at *1 (W.D.N.Y. June 11, 2002). "[H]abitual non-compliance . . . calls in to question a debtor's ability to effectively reorganize." *In re Tucker*, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009) (quoting *In re 210 West Liberty Holdings, LLC*, 2009 WL 1522047, at *7 (Bankr. N.D. W.Va. May 29, 2009)). If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case? Consequently, the "importance of [filing] . . . monthly report[s] cannot be over-emphasized." *In re Myers*, 2005 WL 1324019, at *2 (10th Cir. BAP May 25, 2005). A debtor ignores this basic duty at its own peril.

These Debtors are not the first Chapter 11 debtors in this district to ignore their reporting duties. In fact, many small business debtors are guilty of the same omissions. But the negligence of these Debtors is more egregious than most cases and it compels this Court to finally send a message that flagrant disregard of a debtor-in-possession's reporting duties may by itself constitute sufficient "cause" for dismissal or conversion under §§ 1112(b)(4)(F) & (H).[3] *See Matter of Berryhill*, 127 B.R. at 433; *In re Myers*, 2005 WL 1324019, at *2.

Since the UST established that "cause" exists, the burden then shifted to the Debtors to establish "unusual circumstances" demonstrating that conversion or dismissal is not in the best interests of creditors and the estates. *See In re Dr. R.C. Samatha Roy Inst. Of Science Tech. Inc.,* 2011 WL 2350095, at *3 (3d Cir. June 15, 2011). The Code does not define "unusual circumstances," but the term contemplates "conditions that are not common in chapter 11 cases." *In re Prods. Int'l Co.,* 395 B.R. 101, 109 (Bankr. D. Ariz. 2008). The reporting requirements apply in every case and it is likely the management of every debtor-in-possession would like to rely on being "too busy" running the company to comply with these Code requirements.

In addition, the statute itself sets forth a four-part test that the party opposing dismissal or conversion must establish. Section 1112(b)(2) requires the objecting party to show a reasonable likelihood that (1) a plan will be confirmed within a reasonable time, (2) the "cause" established includes grounds other than continuing loss or diminution to the estate, (3) there exists a reasonable justification for the act or omission constituting cause, and (4) the act or omission will be cured within a reasonable time. 7 Collier on Bankruptcy ¶ 1112.05[2] (Alan N. Resnick

---

[3]   The Court notes that the UST raised other grounds for dismissal or conversion, but given the Court's ruling on this issue, it is not necessary to address the other grounds.

and Henry J. Sommer, eds., 16th ed.). The UST requested dismissal on several additional grounds, including the UST's allegation that the Debtors were experiencing continuing losses and the proposed plan was not feasible. At the time of the March hearing, the last filed monthly reports for the Debtors were the January 2012 reports. Based on the available reports, the UST established that the Debtor had been incurring losses postpetition. Although it is not proper for the Court to consider subsequent events and must confine its ruling to the evidence presented at trial, the Court notes that the monthly reports filed after the hearing for the months of February through April show positive cash flow. For this and other reasons, the Court has elected to confine its ruling to the lack of compliance with the reporting requirements. Since the Court is limiting its ruling to the reporting deficiencies, the Debtors arguably could satisfy at least the second and fourth prongs of this four-part test for "unusual circumstances," but they cannot satisfy the third element. They have not established a reasonable justification for failing to file timely and accurate monthly reports.

This brings the Court to its final decision as to the proper remedy. Section 1112 requires the Court to determine whether dismissal or conversion is in the best interests of creditors and the estates. Unfortunately, courts are rarely given any evidence to aid in making this decision, which makes it difficult to render specific findings. The most that courts usually receive is a statement from interested parties as to their preferences. *E.g., In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 793 (Bankr. W.D. Tenn. 1992) (considering views of the various parties in interest in determining whether to convert or dismiss). The only party to weigh in on the choice in the present cases was the UST. His office believes that dismissal is better for the creditors. The Court has no reason to doubt this assertion. It does not appear that a Chapter 7 trustee would have anything to distribute to the unsecured creditors. In the Debtors' joint disclosure statement, they indicated that there would be no unencumbered assets for distribution to unsecured creditors in a Chapter 7 case. Certainly, the secured creditors are able to liquidate their collateral outside of bankruptcy. No party has indicated that there are potential avoidance actions through which a trustee might realize significant recovery for the estates. The appointment of a Chapter 7 trustee would cause the estates to incur additional administrative expenses. Given these facts, the Court finds that the Debtors' cases are not appropriate for conversion and it is in the best interests of creditors and the estates to dismiss these cases.

### III.   Conclusion

For the reasons stated, the Court hereby GRANTS the United States Trustee's Motion to Dismiss. Both cases are hereby DISMISSED.

DATED this 5th day of June, 2012.

BY THE COURT:

_Elizabeth E. Brown_
Elizabeth E. Brown
United States Bankruptcy Judge